UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Lillian B. Dettle, | Case No. 17-cv-2327 (SRN/TNL) |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION** |
| Treasure Island Resort & Casino, Tribal First, and Hudson Insurance Group, | |
| Defendants. | |

Lillian B. Dettle, 3036 Ardmore Avenue, St. Paul, MN 55112 (pro se Plaintiff); and

Peter Rademacher and Vanya Hogen, Hogen Adams PLLC, 1935 County Road B2 West, Suite 460, St. Paul, MN 55113 (for Defendants).

## I. INTRODUCTION

This matter is before the undersigned United States Magistrate Judge on Defendants Treasure Island Resort & Casino ("Treasure Island"), Tribal First, and Hudson Insurance Group's ("Hudson") (collectively, "Defendants") Motion to Dismiss (ECF No. 22). This motion has been referred to the undersigned for a report and recommendation to the district court, the Honorable Susan Richard Nelson, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1. (ECF No. 28.) A hearing was held. (ECF No. 37.) Plaintiff Lillian B. Dettle appeared pro se. Peter Rademacher and Vanya Hogen appeared on behalf of Defendants.

1

Based upon the record, memoranda, and the proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss (ECF No. 22) be **GRANTED** and this matter be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

## II. BACKGROUND

### A. Allegations[1]

As best as this Court is able to tell, Plaintiff brings the instant action for injuries she sustained at Treasure Island Casino in 2017 after bumping into a chair positioned at an odd angle against a slot machine. (ECF No. 1 at 4.)  According to Plaintiff, Treasure Island saw the injury occur and "sent medical help to [her]." (ECF No. 13-2 at 4.) Plaintiff was treated at the scene with ice packs and a wrap by Treasure Island. (ECF No. 1 at 4.)

Plaintiff's "leg was red, sore, bruised, and swollen." (ECF No. 1 at 4.[2])  During the approximate month following her injuries, Plaintiff's leg worsened. (ECF No. 1 at 4; *see* ECF No. 1-1 at 4-21.[3])  She was treated with oral antibiotics for possible infection and also had a blot clot removed from her leg. (ECF No. 1 at 4; *see* ECF No. 1-1 at 4-

---

[1] When granting Plaintiff leave to proceed *in forma pauperis* in this matter, the Court indicated that it would construe all of Plaintiff's pleading documents (ECF Nos. 1, 1-1, 1-2, 11, 11-1, 11-2, 11-3, 13, 13-1, and 13-2) together as a single pleading in light of her pro se status. (Order at 3, Feb. 23, 2018, ECF No. 15 ("February Order").)

[2] Given the repetitive nature of Plaintiff's multiple filings, the Court has placed additional citations to the record in footnotes. *See also* ECF Nos. 11 at 6; 11-2 at 7-8.

[3] *See also* ECF Nos. 11 at 6; 13-2 at 4-5.

2

21.[4])  While Plaintiff's condition began to improve after this time, her leg "continues to be painful to touch." (ECF No. 1 at 4.[5])

Plaintiff approached Treasure Island regarding her injuries. (ECF No. 1 at 4.[6]) Treasure Island engaged Tribal First as its third-party claims administrator. (ECF No. 1-1 at 1.[7]) Tribal First conducted an investigation, which "showed neither negligence nor liability on behalf of [Treasure Island]." (ECF No. 1-1 at 3.[8]) According to Tribal First, "[t]he chair in question had been moved by another patron shortly before [Plaintiff] struck it" and Treasure Island "had no notice nor time to respond to [the chair's] position." (ECF No. 1-1 at 3.[9]) Tribal First denied Plaintiff's claim. (ECF No. 1-1 at 3.[10]) Hudson appears to have been somehow involved in the processing of Plaintiff's claim. (*See* ECF No. 11-1 at 6-8.)

According to Plaintiff, Treasure Island "is aware of [her] situation," but does not "seem to care." (ECF No. 1 at 4.[11]) Plaintiff alleges that she "almost lost [her] leg and life" due to Treasure Island's negligence. (ECF No. 11 at 6.[12]) Plaintiff alleges that Treasure Island "should have immediately seen [the chair] on their cameras" and corrected the situation. (ECF No. 11 at 6.) Plaintiff also alleges that Treasure Island

---

[4] *See also* ECF No. 11 at 6.
[5] *See also* ECF No. 11 at 6.
[6] *See also* ECF No. 11 at 6.
[7] *See also* ECF Nos. 11-1 at 4; 13-1 at 2.
[8] *See also* ECF Nos. 11-1 at 5; 13-1 at 2.
[9] *See also* ECF Nos. 11-1 at 5; 13-1 at 2.
[10] *See also* ECF Nos. 11-1 at 5; 13-1 at 2.
[11] *See also* ECF No. 11 at 6.
[12] *See also* ECF No. 13-2 at 4.

3

failed to post signs prohibiting the slanting of chairs on slot machines. (ECF No. 11 at 6.[13])

Plaintiff seeks compensatory damages for "medical and prescription costs" and emotional distress resulting from loss of sleep and worry over possibly losing her leg because it was not improving with antibiotics. (ECF No. 1 at 4.[14]) Plaintiff also seeks punitive damages. (ECF No. 1 at 4.[15])

### B. Preliminary Proceedings

From the outset, the Court has expressed concern regarding the existence of subject matter jurisdiction. In an Order dated August 3, 2017 ("August Order"), the Court questioned whether it had jurisdiction over Plaintiff's claims, noting that Treasure Island Casino is run by the Prairie Island Indian Community and, absent a tribe's waiver of its sovereignty immunity or authorization by Congress, federal courts lack subject matter jurisdiction over claims against tribes and their agencies. (ECF No. 3 at 2-3.) The Court also observed that "while [Plaintiff] state[d] that this action [wa]s based on a federal question and reference[d] her 'civil rights,' she ha[d] not identified any specific provision of the federal Constitution or other federal law that might be relevant to her claim(s)." (August Order at 3.) "Instead, any cause of action appear[ed] to be based on common-law tort principles." (August Order at 3.)

Finding Plaintiff's initial complaint to be inadequate, the Court gave Plaintiff an opportunity to file an amended complaint. The Court expressly instructed Plaintiff that if

---

[13] *See also* ECF No. 13-2 at 4.
[14] *See also* ECF Nos. 11 at 6; 13-2 at 4.
[15] *See also* ECF Nos. 11 at 6; 13-2 at 4.

4

she "elect[ed] to amend her complaint, she [could not] simply supplement her current pleading; she must instead file an entirely new complaint and clearly explain why she believes there is jurisdiction over the defendant and why the defendant is liable under federal law." (August Order at 3.) The Court also referred Plaintiff to the Pro Se Project, a program run by the Minnesota Chapter of the Federal Bar Association. (August Order at 3-4; ECF No. 4 at 1-2.)

Plaintiff was given a number of extensions to work with the Pro Se Project. (*See* ECF Nos. 4, 5, 6, 7, 8, 9, 10.) Ultimately, she filed both an amended complaint, (ECF No. 11), and a motion to amend her complaint, (ECF No. 13), accompanied by additional pleading documents, (*see* ECF Nos. 13-1, 13-2). In these documents, Plaintiff (1) changed the name of Treasure Island from "Treasure Island Resort & Casino Business" to "Treasure Island Resort & Casino"; (2) added Tribal First and Hudson; (3) included additional facts regarding what happened, her injuries, and Treasure Island's alleged negligence; and (4) provided additional documentation concerning her injuries, correspondence from Treasure Island, and an insurance policy purportedly issued by Hudson.[16]

In an Order dated February 23, 2018, the Court construed all of Plaintiff's pleading documents together as a single pleading, granted her motion to amend, and granted her leave to proceed *in forma pauperis*.[17] (*See generally* February Order.) Again, the Court expressed "serious misgivings" over whether subject matter jurisdiction

---

[16] The documents submitted by Plaintiff also included portions of this Court's prior Orders containing her handwritten notes and other papers appearing to describe her efforts to obtain counsel in this matter.
[17] *See supra* n.1.

5

exists over Plaintiff's claims against Treasure Island and Tribal First based on sovereign immunity. (February Order at 3-4.)

The Court also observed that "the alleged federal nature of [Plaintiff's] claims continues to be doubtful." (February Order at 4.) The Court stated:

> In response to the Court's Order directing her to identify a specific provision of the federal Constitution or other federal law that might be relevant to her claim(s), [Plaintiff] cited to the First Amendment, stating that it is her civil right to "address complaints." (ECF No. 11-1 at 3.) But, [Plaintiff] has not alleged how any of the Defendants—Treasure Island, Tribal First, or [Hudson]—violated her First Amendment rights. Thus, there does not appear to be any federal question to confer jurisdiction under 28 U.S.C. § 1331.

(February Order at 4.)

The Court further stated that, while 28 U.S.C. § 1332 provides for jurisdiction in diversity cases when a citizen of one state sues a citizen of another state or foreign state and the amount in controversy exceeds $75,000, Indian tribes are not citizens of any state and cannot be sued in federal court under diversity jurisdiction. (February Order at 4.) In a similar vein, the Court stated that, while Hudson was described as being located in the state of New York and was arguably a diverse party, it was "not clear what [Hudson] allegedly did or failed to do that gives rise to [Plaintiff's] claim(s) for relief" and she "ha[d] not pleaded any facts describing [Hudson's] involvement in the events in question." (February Order at 4-5 & n.2; *see* ECF No. 11 at 3[18].)

---

[18] *See also* ECF No. 13-1 at 2.

While allowing Plaintiff to proceed *in forma pauperis*, the Court expressly cautioned Plaintiff that she "should be prepared to address these questions in the future." (February Order at 5.)

### III. ANALYSIS

Defendants move for dismissal of this matter based on lack of subject matter jurisdiction, tribal immunity, insufficient service of process, and failure to state a claim. *See* Fed. R. Civ. P. 12(b)(1), (5), (6). Because the jurisdictional issues are dispositive, the Court's analysis proceeds thereunder.

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "A motion to dismiss pursuant to Rule 12(b)(1) challenges the Court's subject matter jurisdiction and requires the Court to examine whether it has authority to decide the claims." *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015) (quotation omitted). "The plaintiff has the burden of proving subject matter jurisdiction." *Compart's Boar Store, Inc. v. United States*, 829 F.3d 600, 604 (8th Cir. 2016); *see also, e.g.*, *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 917 (8th Cir. 2015) ("The burden of establishing that a cause of action lies within the limited jurisdiction of the federal courts is on the party asserting jurisdiction." (quotation omitted)).

Challenges to the Court's subject matter jurisdiction under Rule 12(b)(1) can be facial or factual. *Branson Label*, 793 F.3d at 914; *Osborn v. United States*, 918 F.2d 724,

729 n.6 (8th Cir. 1990); *see also, e.g.*, *Wilansky v. United States*, 326 F. Supp. 3d 784, 789 (D. Minn. 2018) ("Under Rule 12(b)(1), a defendant may challenge the plaintiff's complaint for lack of subject-matter jurisdiction either on its face or on the factual truthfulness of its averments."). The nature of the attack determines the appropriate legal standard. *Branson Label*, 793 F.3d at 914-15; *Osborn*, 918 F.2d at 729 n.6. "In a facial attack, the court merely needs to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Branson Label*, 793 F.3d at 914 (quotation omitted). "Accordingly, 'the court restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'" *Id.* (quoting *Osborn*, 918 F.2d at 729 n.6) (internal citation omitted). "Conversely, in a factual attack, the existence of subject matter jurisdiction is challenged in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* at 914-15 (quotation omitted). As a result, with a factual attack, the nonmoving party does "not enjoy the benefit of the allegations in its pleadings being accepted as true by the reviewing court." *Id.* at 915; *accord Osborn*, 918 F.2d at 729 n.6.

Here, Defendants have made a facial attack on the existence of subject matter jurisdiction. Defendants assert that Plaintiff has not pleaded a basis for federal-question or diversity jurisdiction. Accordingly, the Court examines Plaintiff's pleading documents to determine if she has sufficiently alleged a basis for the existence of subject matter jurisdiction, drawing all reasonable inferences in favor of Plaintiff. *Biscanin v. Merrill Lynch & Co., Inc.*, 407 F.3d 905, 907 (8th Cir. 2005).

"[A] court's subject-matter jurisdiction defines its power to hear cases." *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 560 (2017). Subject matter jurisdiction "represents the extent to which a court can rule on the conduct of persons or the status of things." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (quotation omitted). "The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006). "Section 1331 provides for federal-question jurisdiction, § 1332 for diversity of citizenship jurisdiction." *Id.* (quotation omitted). "A plaintiff properly invokes § 1331 jurisdiction when she pleads a colorable claim 'arising under' the Constitution or laws of the United States." *Id.* "She invokes § 1332 jurisdiction when she presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $75,000." *Id.* The Court considers each in turn.

### A. Federal Question, 28 U.S.C. § 1331

Federal courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *accord Arbaugh*, 546 U.S. at 513. "Federal-question jurisdiction exists when the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Biscanin*, 407 F.3d at 906 (quotation omitted).

Plaintiff asserts that federal-question jurisdiction exists based on "[t]he right to sue a public business due to an injury that happened on their property." (ECF No. 1 at 3.[19]) Plaintiff asserts that "[i]t is [Defendants'] responsibility and [her] civil right[] to be safe."

---

[19] *See also* ECF No. 11 at 3.

9

(ECF No. 1 at 3.[20])  In the August Order, the Court pointed out to Plaintiff that "while [she] states that this action is based on a federal question and references her 'civil rights,' she has not identified any specific provision of the federal Constitution or other federal law that might be relevant to her claim(s)."  (August Order at 3.)  In response, Plaintiff cited to the First Amendment, asserting her civil right to "[a]ddress complaints" has been violated.  (ECF No. 11-1 at 3.)  Noting this reference to the First Amendment in the subsequent February Order allowing Plaintiff to proceed *in forma pauperis*, the Court stated that "the alleged federal nature of [Plaintiff's] claims continue[d] to be doubtful" as she "has not alleged how any of the Defendants—Treasure Island, Tribal First, or [Hudson]—violated her First Amendment rights."  (February Order at 4.)

Defendants argue that while Plaintiff has not "explicitly identified what law entitles her to relief, . . . her allegations suggest a claim for negligence under Minnesota common law."  (Mem. in Supp. at 5, ECF No. 24.)  Acknowledging Plaintiff's "passing reference to the First Amendment and . . . her civil right to address complaints," Defendants argue that Plaintiff "makes absolutely no allegations that [they] have violated her First Amendment rights," and "[w]ithout any such allegations, any inferable claim under the First Amendment is so untenable as to be patently meritless."  (Mem. in Supp. at 5-6 (quotations omitted).)

Plaintiff's claims sound in negligence.  "Negligence is a cause of action deriving from the common law of states."  *Eickhof Constr. Co. v. Great N. Ry. Co.*, 291 F. Supp. 44, 48 (D. Minn. 1968).  "Negligence consists of a departure from a standard of conduct

---

[20] *See also* ECF No. 11 at 3; ECF No. 11-2 at 9.

required by the law for the protection of others against unreasonable risk of harm." *Elder v. Allstate Ins. Co.*, 341 F. Supp. 2d 1095, 1099 (D. Minn. 2004); *see Eickhof Constr. Co.*, 291 F. Supp. at 48 ("Where a duty of care exists, a breach of that duty is negligence."). "The essential elements of a negligence claim are: (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) breach of the duty was the proximate cause of the injury." *Elder*, 341 F. Supp. 2d at 1099.

According Plaintiff's pleading documents a liberal construction, Plaintiff has alleged that Treasure Island owed her a duty of care to keep its casino premises safe; Treasure Island breached that duty by not responding to the misplaced chair quickly enough and not posting signs prohibiting patrons from leaning chairs against slot machines; she was injured, physically, emotionally, and financially; and her injuries resulted from Treasure Island's breach of that duty of care. *See Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004) ("When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework."). Plaintiff herself has repeatedly referred to Treasure Island's "negligence." (ECF No. 11 at 6; ECF No. 13-2 at 4; Resp. to Mot. to Dismiss at 1, ECF No. 31; ECF No. 35 at 3.) Further, Plaintiff describes her injuries as the "subject matter" of this litigation. (Resp. to Mot. to Dismiss at 1.)

Drawing all reasonable inferences in Plaintiff's favor, Plaintiff has not pleaded facts showing how any of Defendants—Treasure Island, Tribal First, or Hudson—

11

violated her First Amendment rights or any other federal Constitutional provision or law. The only facts pleaded by Plaintiff concern Treasure Island's alleged negligence. Merely referencing the First Amendment and the general right to access the courts, as Plaintiff has done here, is not sufficient. "The mere suggestion of a federal question is not sufficient to establish the jurisdiction of federal courts." *Bilal v. Kaplan*, 904 F.2d 14, 15 (8th Cir. 1990) (per curiam); *accord Biscanin*, 407 F.3d at 907 ("A court does not obtain subject-matter jurisdiction just because a plaintiff raises a federal question in his or her complaint."); *see also Bowler v. AlliedBarton Sec. Servs., LLC*, 123 F. Supp. 3d 1152, 1158 (E.D. Mo. 2015) ("To the extent Defendant argues that this court has federal question jurisdiction simply because Plaintiffs quote or refer to federal statutes or case law in their First Amended Class Action Petition, such a mere reference is not sufficient to create federal question jurisdiction." (quotation omitted)). Because Plaintiff has not raised a federal question regarding the First Amendment (or any other federal Constitutional provision or law) in her pleading documents, there is no subject matter jurisdiction under § 1331.

### B. Diversity of Citizenship, 28 U.S.C. § 1332

While Plaintiff has identified the presence of a federal question as the basis for subject matter jurisdiction, the Court has also considered whether subject matter jurisdiction exists under 28 U.S.C. § 1332 as two of the defendants are described as being located outside of Minnesota—Tribal First (California) and Hudson (New York). (ECF

No. 11 at 3.[21]) Under § 1332, federal courts have original jurisdiction over civil actions involving citizens of different states where the matter in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1).

It is undisputed that Treasure Island is run by the Prairie Island Indian Community. (Mem. in Supp. at 2.) *See, e.g.*, *Krempel v. Prairie Island Indian Community*, 125 F.3d 621, 622 (8th Cir. 1997). The Prairie Island Indian Community is a federally recognized Indian tribe. *Indian Entities Recognized & Eligible to Receive Services from the U.S. Bureau of Indian Affairs*, 83 Fed. Reg. 4235-02, 4238 (Jan. 30, 2018). "[A]n Indian tribe is not a citizen of any state and cannot sue or be sued in federal court under diversity jurisdiction." *Standing Rock Sioux Indian Tribe v. Dorgan*, 505 F.2d 1135, 1140 (8th Cir. 1974); *accord Auto-Owners Ins. Co. v. Tribal Court of the Spirit Lake Indian Reservation*, 495 F.3d 1017, 1021 (8th Cir. 2007) ("As recognized in *Dorgan*, an Indian tribe is not a citizen of a state for diversity purposes."). Stated differently, "[d]iversity jurisdiction is not available . . . under 28 U.S.C. § 1332 [when an Indian tribe is involved] because Indian tribes are neither foreign states, nor citizens of any state."[22] *Gaming World Int'l, Ltd. v. White Earth Band of Chippewa Indians*, 317 F.3d 840, 847 (8th Cir. 2003) (citations omitted); *see also, e.g.*, *C&W Enters.*, 487 F.3d at 1130 n. 2; *Oglala Sioux Tribe v. Schwarting*, 894 F. Supp. 2d 1195, 1198-99 (D. Neb. 2012).

---

[21] *See also* ECF No. 13-1 at 2.

[22] Nor is subject-matter jurisdiction available under 28 U.S.C. § 1330, which provides for original jurisdiction over certain action against foreign states, because Indian tribes are not foreign states. *Navarro v. Eagle Mountain Casino*, 183 F. App'x 659, 661 (9th Cir. 2006) (mem.) ("[B]ecause Indian tribes are not 'foreign states,' § 1330(a) cannot confer jurisdiction in federal court for suits against them."); *see also Oglala Sioux Tribe v. C&W Enters., Inc.*, 487 F.3d 1129, 1130 n. 2 (8th Cir. 2007) [hereinafter C&W Enters.]; *Gaming World Int'l*, 317 F.3d at 847.

The presence of a "stateless" party destroys the complete diversity required under § 1332 despite the presence of other diverse parties. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989). As a result, "notwithstanding the joinder of other diverse parties, the presence of an Indian tribe destroys complete diversity." *Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.*, 207 F.3d 21, 27 (1st Cir. 2000); *see, e.g.*, *Frazier v. Brophy*, 358 F. App'x 212, 213 (2d Cir. 2009) (summary order) ("Because an Indian Tribe is not a citizen of any state, the Oneida Nation's presence as a party bars a federal court from the hearing the matter under its diversity jurisdiction."); *Payne v. Mississippi Band of Choctaw Indians*, 159 F. Supp. 3d 724, 727 (S.D. Miss. 2015) ("[E]ven if all of these named defendants were citizens of Mississippi, as contended by plaintiff, the court would lack diversity jurisdiction in view of the presence of the Tribe, a 'stateless' entity, as a defendant."); *Grand Canyon Skywalk Dev., LLC v. Hualapai Indian Tribe of Arizona*, 966 F. Supp. 2d 876, 880-81 (D. Az. 2013) (presence of Indian tribe destroyed completed diversity notwithstanding other individual defendants); *CTGW, LLC v. GSBS, PC*, No. 09-cv-667-bbc, 2010 WL 2739963, at *2 (W.D. Wis. July 12, 2010) ("It follows that, notwithstanding the presence of other diverse parties in a case, the presence of an Indian tribe that is a real party in interest destroys complete diversity.")

Turning back to the present case, again drawing all reasonable inferences in favor of Plaintiff and assuming for purposes of the instant motion that Plaintiff is a citizen of Minnesota, Tribal First is a citizen of California, and Hudson is a citizen of New York, diversity jurisdiction under § 1332 is nevertheless lacking because the Prairie Island

Indian Community, an Indian tribe, is the real party in interest to Plaintiff's claims against Treasure Island.[23]  Because the presence of Treasure Island and the Prairie Island Indian Community in this litigation destroys complete diversity, this Court likewise lacks subject matter jurisdiction under § 1332.  *See also Abdo v. Fort Randall Casino*, 957 F. Supp. 1111, 1112 (D. S.D. 1997) (no diversity jurisdiction over tribe and tribally owned and operated casino).

### C. Summary

As stated above, federal courts are courts of limited jurisdiction.  While Plaintiff has asserted that subject matter jurisdiction exists under § 1331, she has not pleaded a federal question.  Further, while there are arguably some diverse parties, complete diversity is lacking based on the presence of Treasure Island and the Prairie Island Indian Community.  Therefore, § 1332 does not afford a basis for subject matter jurisdiction.  Accordingly, the Court recommends that Defendant's motion be granted and this matter be dismissed without prejudice for lack of subject matter jurisdiction.

In recommending dismissal of this action, the Court is in no way diminishing the injuries Plaintiff alleges to have suffered as a result of these unfortunate events.  While there may exist a forum in which Plaintiff may assert her claims, it is not in federal court.  Plaintiff should consult with an attorney to determine what, if any, remedies might be available to her.

---

[23] There has been no suggestion that Treasure Island is some type of incorporated tribal entity.  Even then, diversity jurisdiction is not assured.  *See, e.g.*, *Shingobee Buildings, Inc. v. N. Segment Alliance*, No. 1:18-cv-57, 2018 WL 4702151, at *4-9 (D. N.D. Oct. 1, 2018) (discussing two lines of case law regarding the treatment of tribal corporations); *see also Wells Fargo Bank, Nat'l Ass'n v. Lake of the Torches Econ. Dev. Corp.*, 658 F.3d 684, 692-94 (7th Cir. 2011) (discussing authority from the Eighth, Ninth and Tenth Circuit Courts of Appeal).

Lastly, "[i]t is axiomatic that a court may not proceed at all in a case unless it has jurisdiction." *Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 764 (8th Cir. 2001); *see In re Prairie Island Dakota Sioux*, 21 F.3d 302, 304-05 (8th Cir. 1994) ("[S]ubject matter jurisdiction is primary and an absolute stricture on the court."). Because the absence of subject matter jurisdiction strikes at the very core of this Court's ability to hear this action, the Court does not address whether sovereign immunity bars Plaintiff's claims against Treasure Island and the Prairie Island Indian Community; Plaintiff has stated claims for relief against Tribal First and Hudson; or Hudson was properly served. *See, e.g.*, *C&W Enters.*, 487 F.3d at 1132 n.5 ("Because subject matter jurisdiction is lacking, we need not address the tribe's contention that it did not waive its tribal immunity."); *In re Prairie Island Dakota Sioux*, 21 F.3d at 304-05 (district court did not abuse its discretion in remanding matter for lack of subject matter jurisdiction without first considering whether tribe was entitled to sovereign immunity); *see also Ninigret Dev. Corp.*, 207 F.3d at 28 ("[A]lthough tribal sovereign immunity is jurisdictional in nature, consideration of that issue always must await resolution of the antecedent issue of federal subject-matter jurisdiction." (citing *In re Prairie Island Dakota Sioux*, 21 F.3d at 304-05)).

[Continued on next page.]

## IV. RECOMMENDATION

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss (ECF No. 22) be **GRANTED** and this matter be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

Date: November  30 , 2018

       *s/ Tony N. Leung*
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Dettle v. Treasure Island Resort & Casino et al.*
Case No. 17-cv-2327 (SRN/TNL)

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).